May it please the court. My name is John Campbell. I'm attorney for the appellant Pablo Padilla. Mr. Padilla was named in a 78-count superseding indictment that was filed in the Northern District on April 10, 2017. He was charged in three counts in that superseding indictment. On September 25, 2017, Mr. Padilla entered into a plea agreement with the United States government. Pursuant to that plea agreement, the United States government agreed to file a one-count information. Mr. Padilla agreed to admit to selling heroin on one occasion on June 30, 2016. The information that the government agreed to file was filed that same day on September 25, 2017. The probation office under probation officer Ashlyn Lallman prepared a PSR which was published on December 5, 2017. Inside that PSR, she included an arrest that occurred on August 6, 2016. As part of that arrest, it's alleged that Mr. Padilla possessed methamphetamine. It's alleged that the total amount of methamphetamine that he possessed during that arrest was 17.38 grams and that he possessed a .25 caliber pistol. The defendant objected to including this arrest in the PSR. Up to that point, no information had been produced in discovery about this arrest. No police reports, no labs, no photographs of any of this evidence, not the evidence itself. That objection to the PSR was filed on April 2, 2018. At sentencing, the government did not bring any additional evidence to sentencing. This would include the information that Ms. Lallman claimed she used to include this evidence in the PSR. I was a little confused about that. The arrest report was not admitted into evidence, but it appears that the judge had that and looked at it. Am I correct about that? I'm not sure what the judge had, Your Honor. Certainly, there was nothing in the record that was a police report or any sort of affidavit from the officer. I did note the language. You weren't the counsel at the hearing? I was, Your Honor. I was at the hearing. There was an argument about not having gotten that report sooner, and the court dealt with that as I understood it. Maybe I misread that. It was never produced, Your Honor. There was nothing ever produced in discovery, and there was nothing produced at the sentencing hearing. I know that the judge... So what the judge was saying, it was available to you. You could have gotten it if you wanted. Yes, Your Honor. I could have gone to the courthouse and pulled at a minimum the affidavit from the police officer that would have been used as part of the charging papers. Now, Ms. Lallman says in her, if you look in Volume 3, in her response to my objection... Or you could have gone online to the Oklahoma website, right? The Oklahoma court website and gotten it. No, Your Honor. Those are no longer available online, at least not in Tulsa County. Arrest reports? I thought the judge referred to that in the hearing. He did make reference to it being available in the public record. I don't believe he said I could get it online. Okay. There is an information system that the Oklahoma Supreme Court provides where you can look up cases. So I could see that the arrest occurred, but I believe they've taken a lot of the charging papers off of that because it contains people's Social Security number and dates of birth and things like that. So the government claims that I didn't object properly because after we discussed my objection to the PSR, the court asked me if I had any other objections, and I said no. And then this was, I guess, after his finding of facts, after he denied my motion and had some fact-finding. He asked me if I had any other objections. I said no. And then he moved on to sentencing. Well, why isn't that a problem? I mean, it seems to me that the rule contemplates that you'll do two things, that one, you will object to the factual problem, and then if the court doesn't resolve that factual problem under Rule 32 to your satisfaction, in other words, does not employ the procedure that is appropriate, you'll object to give the court an opportunity to avoid us revealing that and avoid committing an error. So why isn't that a problem? Because in fact, it becomes a material matter that the court did do this fact-finding and then said, all right, it's time for sentencing. Well, at that point, why is it incumbent upon you to say, no, Your Honor, you didn't resolve this in a way that was appropriate. You didn't have them present the police report. You didn't have them provide a factual foundation for resolving this dispute. The way I interpreted the court's comment to me was that he acknowledged I had an objection to the use of this August 6th arrest. I wanted to know if I had any other objections. At that point, I didn't feel it was necessary to rehash the objection we had just discussed at some length, as it would have been futile, as indicated by the court, if I had any other objections other than the one we had just discussed. Well, the one you didn't discuss correctly then, well, explain to me, what was the nature of the objection? The objection was, was it to the accuracy of what was in the PSR? Was it that we have no basis to know whether this happened or not? What was the nature of your objection? My objection was there was no evidence in the record to support the use of this alleged arrest in the PSR or as part of sentencing. Okay. So there was, no, go ahead. Well, let me read you what you said, because I thought you had a much better record than you told us about. During the hearing, if I'm correct, and I'm sure Apple Eagle will correct me if I've got this wrong, you said there's no scientific report showing that the substance was actually methamphetamine. There's no photographs of the substance to even show that there was something that looks like methamphetamine. There's no technical or scientific report showing what this substance weighed. I would take that as an adequate objection that the government needed to put on some evidence that the substance seized was methamphetamine and it weighed the amount alleged in the PSR. But you didn't, I'm not sure why you didn't point to that specific comment, but that seems to be a wholly adequate objection. Well, yes, Your Honor, that's my point, is I believe I did make an adequate objection. I wish you'd described it more precisely, but okay. The basis for this appeal is that, in pursuit of the plea agreement, in the plea agreement, the government agreed that it would prove up sentencing factors by a probable cause standard, which is the law. We objected that there was no evidence of this August 6th arrest. We don't know if it was actually methamphetamine he had, what the actual weight of this alleged drug was, whether or not he actually had a pistol. And all of these factors are extremely significant when you're running the calculus of what the substance is. I think there's a difference between the pistol and the drug. If the officer said, I seized a pistol, that's pretty much all you need. But an officer can't say that's methamphetamine without some sort of scientific test and can't say how much it weighed without indicating that that was done. It seems to me your argument on the pistol is pretty weak. It would be weak if the government had provided some sort of evidence that there was a pistol there, but there never was a police report or a police officer brought to a hearing to provide any sort of testimony or evidence. So let me ask you about that, because I don't think that's been entirely clear this morning. You're at the sentencing hearing, and is the judge up there saying something about, look, I've got this police report here, or is he talking about reading about a police report in the PSR? He certainly did not have a police report in his hand, Your Honor. And did the government have a police report and say, Your Honor, it's right here in the police report? No, Your Honor. Okay, and obviously you didn't have the police report either. No, Your Honor. Okay. I kind of expected something like that to happen, but it did not. Right. I'm just – and the reason I ask is because I'm just thinking through the mechanics of a sentencing hearing. You say, oh, I object. You know, you don't have any evidence there was a gun. It seems that the government is then going to say, oh, yes, we do. We have the officer in the back, or you have the police report right there, Judge, at which time you could say, can I see it, because I've never seen it before. Yes, I expected there to be some sort of evidentiary hearing, and none occurred. Right. I mean, so what – besides the PSR, what evidence was there with the judge that day that you could dispute that there was a gun? I'm not totally sure I understand your question, but there was no evidence produced at the time. Well, I mean, okay, so that's assuming you hadn't objected to the PSR, right, to the finding. Yes, Your Honor. Okay. So your position there was not. My position is that no evidence was ever brought into this case that there was an August 6th arrest that included my client possessing a firearm and methamphetamine. What relief are you seeking? I would like this case remanded back so that he would be sentenced just upon the record on appeal. I am a little concerned that the government might attempt to make its case better if it's just remanded back without instruction, but I would like instruction that it be remanded back with a record on appeal. What authority do you have for that? Ordinarily, don't we remand for a new sentencing hearing? I believe in our brief we cited to Easterling? We have Campbell. Was it Campbell? Oh, yes, Your Honor. Wait a second. No relation. I hope not, Your Honor. It could have been a minor offense. Or it could have been a McDonald that charged him. I apologize, Your Honor. I'm not very well prepared to answer that question. But you're suggesting there's a case in which we said he's sentenced on the record. Yes, Your Honor. That was egregious circumstances, was it not? I don't know that it would be any more egregious in this circumstance. I acknowledge my client wasn't looking at a tremendous amount of time or that this enhancement has caused him to serve years and years extra. So if that's what you mean by egregious, but it is a violation of the Constitution, which I think is always egregious. Would your argument be that you had notified them, put them on alert of the problem, and they just didn't fix it? That being the government. In other words, is that the rationale that would support? I certainly didn't call up the prosecutor, but my objection. I guess what I'm getting at is you indicated a defect. It didn't get fixed. Is that a basis for saying you shouldn't be able to fix it now? Oh, yes, Your Honor. All right. That's all I have, Your Honor, if you have no further questions. Thank you. May it please the Court. Thomas Duncombe on behalf of the United States. In this case, the sentencing court did not err clearly or plainly in accepting as reliable the facts found in an August 6, 2016, police report, including finding that there were corroborating facts in the record that were not disputed by the appellant. So did the court have the police report up there on the bench when you guys were at this hearing? I have to start by saying I was not counsel at the sentencing hearing. But don't you think it's important to know that? I mean, we have an objection. There's no evidence. And then all of a sudden there's discussion of a police report, but nobody apparently presented that to the court during the hearing. I agree that the reading of the transcript that I have is the same as yours, that no one presented it during the hearing. But I also think it's a fair reading of the transcript, and that was my understanding of the transcript was that the court had reviewed the police report, because the police, the court didn't say the summary of the police report contained in the PSR appears reliable. The court said the PSR or the police report is reliable. Well, when was the police report prepared? The day of the arrest? The day of the arrest. If you look at it. How the heck did they know it was methamphetamine then? I agree that that particular fact was not proven up by the government at sentencing, that it was lab tested as methamphetamine. I mean, I don't think so, because. Really, how can the judge say that the police report reliably state it was meth when there's no way that there could have been a scientific test at that point? Well, respectfully, what this Court's cases require is not a scientific test. What this Court's cases require is a preponderance of the evidence shown. It requires evidence, and there really isn't any. I mean, you just alluded to the fact that it's an open question whether it was meth or not. Well, if you're going to hold them responsible at sentencing for it being meth, then there ought to be a little bit of evidence that it is meth. And more troubling to me is that in the answer brief, there's no reference to our case, United States v. Dugan, which D-O-U-G-A-N, which they cited, which seems to me is controlling here. I mean, in that case, it was the dispute over police report. And the question was, the Court said, we said, that a police report is not inherently reliable. And therefore, there needs to be some basis to show that that police report was reliable. And we talked about the fact that the police report had to be admitted in evidence. None of that happened here. So, Your Honor, a couple things I would say about Dugan in response to your question. Well, you didn't say it in your brief. No, Your Honor, that's correct. But part of the reason for that is that Dugan is not binding precedent on this panel. That footnote in Dugan that you just referenced was dicta, because the ultimate holding in Dugan was that the 17-year-old conviction for a possible or alleged sex offense was too remote in order to be considered by the Court at sentencing. Well, it would be nice if you had talked about that dicta in your brief and explained why it wasn't relevant. I mean, that's – I agree, Your Honor. All right, then. All right, so it's dicta. Go ahead. Well, it sounds like alternative holding to me. I'm not accepting this dicta. I'm just saying, okay. Well, and the Court, it's important to also understand at the end of that footnote, the Court in – this Court in Dugan assumed for the purposes of that appeal that the sex offense was a prior conviction for a sex offense, because the Court needed to do that in order to get to its holding on the merits, which was that it was too remote in order for the Court to have counted it. So the Court made those statements, and they're certainly persuasive, and the government should have responded to those statements and responded to the citation to Dugan, but it's not – it wasn't part of the Court's holding. Well, the bottom line is, looking at that footnote, the Court's citing cases. So whether – and it says specifically, the record in this case does not conclude a police reporter's sworn complaint, and then goes on to talk about how there is nothing – let's see here. Well, the matter – this matters because not every complaint has sufficient indicio of reliability for use in sentencing. And then it cites to our cases, by contrast, that exist, that are already present, and they're binding cases, to support that proposition. And so the bottom line is, at least Dugan panel thought that there were cases out there that supported its premise, even if – and I'm not accepting your argument right now that this footnote is dicta, but even if it were dicta, it suggests the direction in which our Court has previously held, not that Dugan's making this stuff up, but that that's what we've held. And so what you've got is exactly that situation here. You've got a police report. You've got nothing to support the reliability of what's in that police report. You don't have the police report admitted into evidence, number one. Number two, there is nothing. I mean, consistent with your own statement, we don't even know whether it was met or not. And so – Your Honor, if I may respond. Yeah, help me out. Why do you win? I would point to the Cook case from this Court as an example, and that was 2008, as an example of a case where there wasn't any additional evidence presented by the government at sentencing. Nevertheless, on the question of whether the record established the sentencing fact by a preponderance of the evidence, the answer was yes, because there was sufficient corroboration for the facts that were established in the PSO. So what's the corroboration here? What's the corroboration that there was a gun? The corroboration here, and I want to say at the outset, there's two parts to the answer to that question. The first part is the factual objection to there being a gun on the scene was not presented to the district court, either in the objection to the PSR or at the sentencing colloquy. The appellant mentioned the methamphetamine. We're not sure. We haven't tested it. We haven't gotten the police report. But that's my first response on the gun. But secondly, there was significant corroboration in the PSR, in undisputed portions of the PSR, that this was an organization that routinely possessed guns and traded in guns as part of their drug trafficking organization. There was also corroboration in the PSR about the defendant's prior possession of methamphetamine, and there was corroboration in the PSR in one of the paragraphs I believe it was paragraph 40 in the PSR that was not contested by the appellant that he was previously arrested and charged with possession with intent to distribute methamphetamine on December 2nd, 2016. Which tells us nothing about what happened on August 2016. Admittedly, the key piece of information, Your Honor, is the police report. But as I say, my reading of the sentencing transcript is that the court had reviewed the police report, not just the PSR summary of the police report. I would have attested the key piece of the police report. You've also gotten the last report. It is, Your Honor. But it is only if this Court finds that the factual objection to the police report in the PSR was squarely raised by the appellant. And that brings me to our plain error argument, which is that – Before you go into that, Judge, did you have – No, go ahead. No, you've got a question that I interrupted. I can't remember what it was. I'm sorry. That's bad. I'll remember it. Okay. Go ahead. And, Your Honor, it is the government's position that part of the reason why these facts weren't fleshed out to a higher degree at the sentencing hearing was because the appellant's objection to the PSR didn't really raise a factual challenge to the fact that there was methamphetamine, the fact that it weighed a certain amount, the fact that there was a gun. The arguments in the objection to the PSR were legal in nature. And just like as in this case – as in this Court's case of Warren, there was a single stray comment that referenced the factual standard, which is preponderance of the evidence, but it was at the end of and in conjunction with or part of an argument about due process that the problem with the police report was that the defendant hadn't previously received it. The other part of the defendant's legal argument to the PSR statements about the August 6th police report were that the gun and the methamphetamine were not properly considered relevant conduct because they were not part of the offense at issue. Well, I mean, he says right here, since the first indictment in this matter was filed against Mr. Padilla, there's not been any evidence produced which links him to the methamphetamine. That's correct. But I read that argument as an argument in furtherance of his point that this is not properly considered relevant conduct. Because the point he's making, if you read that point in context, is I was not put on notice that this was a methamphetamine case. I was put on notice that this was a heroin case. And so if you look at the government's response to that objection, the government responded in kind. The government pointed to the conduct of the conspiracy in general. The government pointed to the indictment, the various parts where it talks about that it was part and parcel of this organization to distribute methamphetamine, that it was part and parcel of Mr. Padilla's role to distribute drugs and to distribute about this quantity of drugs. And then it was only at the sentencing hearing itself where Mr. Padilla raised for the first time the issue of we don't know whether this was methamphetamine. We don't know whether this was actually 17.38. Did you – I'm sorry. No, I'm not going to repeat that. Did the government, I mean, at that hearing, did you say, wait a minute, Judge, he didn't raise that in his objection. Did they object to his bringing it up orally at the hearing? I mean, that happens all the time at sentencing hearings. No, Your Honor. And so two points I would want to make on that. The first point is the better procedure for the government at that moment would have been for the government to take a step back and ask for a continuance and say, Your Honor, we're receiving – we're hearing new objections now about the facts within the PSR, and so we would like to take a continuance to analyze whether we need to produce additional evidence or whether, as in Cook, there is already enough evidence in the record to establish these sentencing facts by a preponderance. That would have been the better practice by far. That's the first point. The second point I wanted to make is once that – once that statement was raised about we don't know whether this was really meth, we don't have the bullets from the gun, for instance, that was stated at the sentencing hearing, the government responded by resolving those factual objections and said the police report is sufficiently reliable to establish a sentencing fact. And as these – as this Court's cases like the Warren case make clear, if the defendant was unsatisfied or found that factual resolution inadequate, he then had an obligation to raise an objection to those factual findings. That was the first time there was a factual finding made by the Court about any sentencing facts. And so if the defendant – and Warren specifically talks about – if I object to the facts in the PSR, then you have to prove it. And you can't prove it by just relating back to things that are in the PSR. You have to come forward with, you know, some type of evidence that can be contested there in the hearing. It doesn't sound like you did that or your colleague at the district court. So one brief addendum I would want to make to that, I agree with the vast majority of what you've said, but the one point I would want to make is it's not the government's obligation at that moment to produce evidence necessarily. It's the government's obligation to ensure that there is enough evidence in the record, like in the Cook case where the government didn't produce any additional evidence, but nevertheless, this Court found it was. I mean, where's the police report in the record? The police report's not in the record. I mean, so, I mean, we're – we're relying – you're relying on something that's not even in the record. I mean, that – I mean, it wasn't pulled out at the hearing. It wasn't – there was no opportunity for the other side to contest it, to – Well, the Court found, respectfully, Your Honor, that there was an opportunity for the defendant to contest it, because the Court, in addition to citing the uncontested facts that were in undisputed parts of the PSR, the Court cited the facts that were of public record, including the fact of the arrest, the criminal case docket, the probable cause statement. And – and the record shows, as we stated in a footnote in our brief, that once the defendant in – once Mr. Padilla, in that State case, requested discovery, requested police reports, there were 11 pages of documents provided to Mr. Padilla. So either Mr. Padilla already had the police report, or Mr. Padilla certainly had the opportunity to get the police report. How in the world can we review this? I'm highly skeptical of this, in part because I don't see how an arrest report dated the day of your arrest could possibly be sufficient evidence that this was methamphetamine. Maybe – maybe they could have weighed it at the scene. I doubt that. So, I mean, what – what you're saying in sum is there was an objection made to the PSR. We read it this way – there was an ambiguity, perhaps – that he's not really challenging whether there was meth or not. So we didn't get – we didn't prepare anything for the hearing. At the hearing, the Court says, I'll be happy to entertain argument if it's in addition to that which is set forth in the briefs, or you feel that something needs to be emphasized, I'd be happy to hear it. And then defense counsel, I think, is pretty darn clear what his complaint is there. And there's no – well, you get the drift. I mean, you wouldn't – you wouldn't suggest that the ATF agents go arrest somebody based on a statement in some police report somewhere, would you? That the ATF agents, without examining a firearm, without, you know, determining where it was made, things like that, go arrest someone for being a felon in possession, for example, based on public availability of a police report. Well, I would say that the question in that situation would be whether there's probable cause to arrest. And in this case, there is a sufficient amount of corroboration of – Well, your only corroboration of that was that he belonged to some organization that the PSR said routinely used firearms. I mean, you still wouldn't present that complaint, would you? We could throw that paragraph in there, too. I think that it would depend on a lot of things. I think in the context of this case, where this is someone who is known to have participated in this particular conspiracy, you might want to file a complaint and then see what other facts develop. But I think that in this case, my reading of the sentencing transcript is that the court had the police report and had reviewed it. Otherwise, the court wouldn't have said the police report bears sufficient evidence of reliability. And even if it had the police report, what difference does that make? I mean, it wasn't admitted into evidence, and the court has a police report that speaks of meth, and there's no basis to know whether it's meth or not, which you said from the very beginning. So, I mean, who cares? I wouldn't say there's no basis. All right. I think what I said earlier was that there wasn't any lab testing. Okay. It's in the police report. We don't – we have no basis to know beyond that, do we, that it's meth? I don't necessarily agree with that because I do think that there's – there's sufficient – there is abundant evidence in the PSR and in the indictment, which hadn't been dismissed yet at the point the sentencing hearing was going on, that supports that Mr. Padilla was a meth user. But he objected to the meth-related stuff in the PSR. He did, but this Court, respectfully, is pretty specific about what an appellant must do at the sentencing hearing in order to squarely raise a factual objection to trigger the Court's analysis under 32.1b, which is the Court, the appellant must at the sentencing hearing question the reliability of the evidence and articulate reasons why the facts are untrue or inaccurate. And that didn't happen here. And so I would say to the extent that there was ambiguity at the sentencing hearing, part of that was caused by the unclear objection that the defendant was raising. And I would say that if – if this Court decides that the objection was squarely raised and that the Court didn't have sufficient facts to make its factual finding, that the proper result would be a remand for the Court to make those findings of fact in the first instance. This is not a case, I would submit, like Campbell, where there was a patently erroneous legal argument that the government was doubling down on in order to avoid putting on evidence. I think, again, the best – I understand I've run out of time. You're 3 1⁄2 hours. 3 1⁄2 hours. 3 1⁄2 minutes over, so. Thank you, Your Honors. I appreciate it. Any other questions? Yeah. Okay. Thank you. Counsel, you've had some time left if you want to. Unless the Court has any specific questions for me, I'll waive the balance of my time. Thank you, Counsel. Thank you, Counsel. The case is submitted, and counsel are excused. We'll take one more case before the break.